

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO DISTRICT COUNCIL OF CARPENTERS WELFARE FUND, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No: 04 C 5868 ) |
| CAREMARK RX, INC. and CAREMARK, INC., | ) Judge John W. Darrah ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, the Chicago District Council of Carpenters Welfare Fund, filed suit against Defendants, Caremark Rx, Inc. ("Caremark Rx") and Caremark, Inc. ("Caremark, Inc."). Plaintiff alleges that Defendants, in exercising their contractual duties to provide pharmacy benefits, engaged in certain prohibited transactions, in violation of 29 U.S.C. § 1106(b) of the Employment Retirement Income Security Act of 1974 (Count I); breached the contracts (Count II); and violated the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 (Count III). The breach of contract claim is only asserted against Caremark, Inc. Presently before the Court is Defendants' Motion to Dismiss. For the following reasons, that motion is granted in part and denied in part.

## LEGAL STANDARD

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). A plaintiff is

not required to plead the facts or elements of a claim, with the exceptions found in Federal Rule of Civil Procedure 9. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002); *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

## BACKGROUND

The facts, for the purposes of this motion, are as follows. Plaintiff provides health and welfare benefits to members of a labor union. One benefit provided by Plaintiff is a prescription drug benefit, whereby members of the union can obtain brand-name or generic drugs for a small copayment while Plaintiff pays the remainder. In order to manage this benefit, Plaintiff signed contracts with Defendant Caremark, Inc. in 1996, 1999, and 2003. Caremark, Inc. is the wholly-owned subsidiary of Defendant Caremark, Rx. Together, Defendants contract with 55,000 retail pharmacies and operate four automated and nineteen mail-order pharmacies to process prescriptions for its clients.

Defendants negotiated with retail pharmacies and drug manufacturers to obtain pharmaceuticals for Plaintiff and its members. Plaintiff then paid a set price for each drug, as negotiated between Plaintiff and Defendants. *E.g.*, 2003 Contract, Ex. A § 1 ¶ 2; 2003 Contract, Ex. A ¶ 4(a); 1999 Contract ¶ 4(a); 1996 Contract ¶ 4(a). Defendants, though, obtained rebates and certain savings from drug manufacturers and retail pharmacies so that Plaintiff paid more for the drugs than Defendants. Defendants did not disclose these savings and rebates to Plaintiff.

Pursuant to the contract, Plaintiff also participated in and adopted Defendants' formulary program. 2003 Contract, Ex. A ¶ 2(e); 1999 Contract ¶ 2(e); 1996 Contract ¶ 3(d). Under this program, Defendants chose certain drugs that would be cost-effective in various therapeutic categories. Plaintiff also participated in Defendants' drug-switching program, whereby Defendants could contact prescribers to obtain approval for substitution of formulary drugs when similar non-formulary drugs were prescribed. 2003 Contract, Ex. A ¶ 2(e); 1999 Contract ¶ 2(e); 1996 Contract ¶ 3(d). While Plaintiff had authority to administer the Plan and discretion to choose drugs on the formulary, Plaintiff adopted Defendants' formulary. 2003 Contract, Ex. A ¶¶ 4(b), 2(e); 1999 Contract ¶¶ 4(b), 2(e); 1996 Contract ¶¶ 4(e), 3(d). Defendants chose more expensive drugs for the formulary because they negotiated secret rebates, discounts, and other fee savings with drug manufacturers which were not disclosed to Plaintiff.

In the 1996 and 1999 contracts, Caremark, Inc. was required to invoice Plaintiff for certain drugs based upon the drugs' Average Wholesale Price ("AWP"). During this period, Caremark, Inc. would purchase drugs in large package sizes and invoice Plaintiff based on the AWP of a smaller package size.

According to section (4a) of the 1996 contract, Caremark, Inc. was required to invoice Plaintiff for certain generic drugs at the standardized Maximum Allowable Cost ("MAC") pricing, if such a price was generated by the appropriate federal agency. If such a price was not generated by the federal agency, then Caremark, Inc. was required to generate a comparable MAC price and invoice Plaintiff at that amount. Caremark, Inc., though, invoiced Plaintiff at higher prices for these drugs.

3

## ANALYSIS

Defendants contend Plaintiff's ERISA claim should be dismissed because Defendants are not fiduciaries and have breached no fiduciary duties. Caremark, Inc. also argues that Plaintiff's breach of contract claim fails to state a claim. Defendants further assert that Plaintiff's Consumer Fraud Act claim should be dismissed because: (1) Plaintiff is not a consumer; (2) Plaintiff has not alleged any consumer protection concerns; and (3) Plaintiff has failed to plead this claim with the requisite particularity. Lastly, Caremark Rx contends that Plaintiff's claims against Caremark Rx, Counts I and III, should be dismissed because it is not a party to the contracts.

### *ERISA Claims*

To be held liable under ERISA, Defendants must: (1) be considered ERISA fiduciaries and (2) have acted in a fiduciary capacity in taking the actions that are the subject of the Complaint. 29 U.S.C. § 1002(21)(A); *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). To be considered fiduciaries of a plan under ERISA, Defendants must either: (1) "exercise[] discretionary authority or discretionary control respecting management of such plan or exercise[] any authority or control respecting management or disposition of its assets" or (2) "ha[ve] any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). Further, Defendants are only fiduciaries to the extent they exercise discretionary authority; and, therefore, Defendants may be ERISA fiduciaries for some purposes but not others. 29 U.S.C. § 1002(21)(A); *Baker v. Kingsley*, 387 F.3d 649, 660 (7th Cir. 2004).

The contracts[1] unambiguously state that "nothing in this Agreement shall be deemed to confer upon [Defendants] the status of fiduciaries as defined in [ERISA]." 2003 Contract, Ex. A ¶ 4(b); 1999 Contract ¶ 4(b); 1996 Contract ¶ 4(e). These unambiguous provisions may be construed as a matter of law. *Central States, S.E. & S.W. Areas Pension Fund v. Kroger*, 226 F.3d 903, 910 (7th Cir. 2003) (*Kroger*). As such, Defendants are not fiduciaries under the contracts and may not be held liable under ERISA.

Despite these provisions, Plaintiff's Complaint alleges Defendants were fiduciaries in the following capacities: (1) in negotiating with retail pharmacies the prices the plan pays for drugs, (2) in negotiating with drug manufacturers the prices the plan pays for drugs and the rebates obtained for those drugs, (3) in determining which drugs are on the plan's formulary, and (4) in determining which drugs should be targeted for cost savings in the drug-switching program. Plaintiff's Complaint alleges Defendants breached these duties by: (1) charging Plaintiff a higher price than Defendants obtained for the drugs from retail pharmacies and (2) choosing drugs for the formulary and drug-switching programs which are more expensive so that Defendants may obtain rebates without passing those savings on to Plaintiff. Plaintiff also contends that Defendants failed to pass through a set portion of rebates Defendants obtained from manufacturers; this allegation was not contained in the Complaint. However, even without the provisions preventing Defendants from being considered fiduciaries, Defendants may not be held liable under ERISA.

---

[1] When allegations in a complaint contradict a written instrument attached to the complaint, the written instrument controls. Fed. R. Civ. P. 10(c); *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002).

5

Plaintiff argues that Defendants breached their fiduciary duties by charging Plaintiff more for drugs than the price Defendants obtained in their agreements with retail pharmacies; Defendants then kept the difference. According to Plaintiff, Defendants' actions violate their duty to use "commercially reasonable efforts" in negotiating prices with retail pharmacies, as required in paragraph 2 of section 1 to Exhibit A of the 2003 contract. That provision provides:

> Retail Pharmacy. For each Prescription billed to [Plaintiff], electronically processed and dispensed to a Covered Member through [Defendants'] retail pharmacy network, [Plaintiff] shall pay [Defendants]: (i) for Brand Drugs, the lower of Usual and Customary Price or AWP less 15%, or (ii) for Generic Drugs AWP less 55%; plus in each case a dispensing fee of $2.05 for Brand Drugs and $2.20 for Generic Drugs, and less the Covered Member Copayment as established by [Plaintiff]. [Plaintiff] shall also pay any applicable sales or use tax. The Covered Member Copayment for each electronically processed retail Prescription shall be the lesser of the Covered Member Copayment as established by [Plaintiff] or the pharmacy's usual and customary charge. The above prices are based on the participation of a full and complete [Defendants] retail pharmacy network. [Defendants] shall use commercially reasonable efforts to negotiate these rates with existing pharmacies in the [Plaintiff's] retail network. In the event of changes in the marketplace beyond the [Defendants'] control resulting in a reduction in the number of participating pharmacies or in contract reimbursement rates for this retail network, pricing shall be adjusted to reflect these changes. Such pricing adjustments will take effect only after [Defendants] provide[] at least thirty (30) days written notice of its intention to adjust pricing and upon . . . written agreement of such price increases.

However, this provision does not require Defendants to pass through cost savings to Plaintiff. Rather, this unambiguous provision obligates Defendants to charge Plaintiff a set price for each drug. In the event Defendants cannot obtain the agreed contractual price, Defendants may obtain a price increase only upon written agreement. No other provision exists in the contracts whereby Defendants are obligated to pass through cost savings from retail pharmacies. Because the prices

6

set in the contracts are negotiated between Plaintiff and Defendants, Defendants cannot be held liable for breaching any fiduciary duty in this regard. *See Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1131-32 (7th Cir. 1983).

Plaintiff also argues that Defendants are fiduciaries in negotiating with drug manufacturers. Defendants, though, are not fiduciaries in this regard. Nothing in the contracts requires Defendants to enter into agreements with drug manufacturers on behalf of Plaintiff or to negotiate the prices Plaintiff pays for the drugs with drug manufacturers. To the contrary, "[Defendants] may hold contracts with the manufacturers of products covered under this Agreement and in connection with such contracts, [Defendants] may have a financial relationship with such manufacturers and receive rebates from such manufacturers." 2003 Contract, Ex. A ¶ 4(e). Furthermore, the contracts also unambiguously provide that the price for the drugs are determined according to set prices negotiated between Plaintiff and Defendants.

Plaintiff next argues Defendants are breached their fiduciary duties in choosing drugs for the formulary and drug-switching program. According to Plaintiff, Defendants place more expensive drugs on the formulary and in the drug-switching program so that Defendants may obtain rebates and other cost savings from the manufacturers; Plaintiff contends that Defendants failed to pass those savings on to Plaintiff.

Plaintiff adopted Defendants' formulary and drug-switching program in each contract. In conjunction with these provisions, Plaintiff "acknowledge[d] that [it] has sole discretion and authority to determine the formulary for the Plan." 2003 Contract, Ex. A ¶ 2(e). Plaintiff further agreed to have "sole authority to control and administer the Plan." 2003 Contract, Ex. A ¶ 4(b); 1999 Contract ¶ 4(b); 1996 Contract ¶ 4(e). As with all other drugs, the prices for the drugs

7

included in these programs are set in the contract negotiated between Plaintiff and Defendants. Accordingly, Defendants did not breach or have any fiduciary duties with respect to the formulary and drug switching programs.

Lastly, Plaintiff argues that Defendants, under paragraph 3(g) of the 1996 contract, were obligated to pass through a set portion of rebates Defendants obtained from manufacturers. This allegation was not contained in the Complaint and generally is not appropriate to resolve on a motion to dismiss. *See Perkings v. Silverstein*, 939 F.3d 463, 470 n.6 (7th Cir. 1991). Even if this argument could be considered, Plaintiff's claim would still be dismissed. Paragraph 3(g) provides that:

> [Defendants] shall pay [Plaintiff] in connection with the [Defendants'] Formulary Program an annual rebate of $1.50 for each mail order prescription and $.75 for each retail prescription filled during the prior year. This payment shall be made within sixty (60) days of the end of each contract year. If for any reason [Defendants are] no longer eligible to receive rebates from pharmaceutical manufacturers' rebate programs, [Defendants] shall not be obligated to make the payments set forth in this section.

Nothing in that unambiguous provision required Defendants to pass through manufacturers' rebates. Rather, Defendants were only required to pay a set rebate for each mail order and retail prescription filled during the prior year.

Based on the above, Defendants' Motion to Dismiss Count I is granted.

*State Law Claims*

Plaintiff alleges jurisdiction exists under the diversity jurisdiction statute, 28 U.S.C. § 1332. It is, therefore, necessary to consider the state law claims. Caremark, Inc. argues that Plaintiff fails to state a claim for a breach of contract. Defendants also assert Plaintiff's Consumer Fraud Act claim should be dismissed because: (1) Plaintiff is not a consumer; (2)

8

Plaintiff has not alleged any consumer protection concerns; and (3) Plaintiff has failed to plead this claim with the requisite particularity. Defendants further argue that Plaintiff's Consumer Fraud Act claim should be dismissed as to Caremark Rx because it is not a party to the contracts.

Plaintiff alleges that Caremark, Inc. breached the contracts in a number of ways, including: (1) charging a higher AWP for mail dispensed drugs in the 1996 and 1999 contracts and (2) charging higher MAC prices for generic drugs. To properly assert a claim for a breach of contract, Plaintiff must allege that it suffered damages when Caremark, Inc. materially breached one or more provisions in a contract which existed between the parties. *See e.g., Derson Group, Ltd. v. Right Mgmt. Consultants, Inc.*, 683 F. Supp. 1224, 1230 (N.D. Ill. 1988).

Under the 1996 and 1999 contracts, Caremark, Inc. was required to invoice Plaintiff based on the AWP for certain drugs. However, during this period, Caremark, Inc. purchased drugs in large package sizes but invoiced Plaintiff based on the AWP for smaller package sizes. The 1996 and 1999 contracts are silent as to this practice and, therefore, are ambiguous in this regard. Any determination should be resolved as a matter of fact. *Kroger*, 226 F.3d at 910. Section 4(a) of the 1996 contract required Caremark, Inc. to charge Plaintiff the MAC price for all generic drugs that were given such a price by the appropriate federal agency. For generic drugs that did not have such a generated price, Caremark, Inc. was required to generate a comparable MAC price. Plaintiff alleges that Caremark, Inc. charged higher prices than permitted under § 4(a). Caremark, Inc. offers no arguments to the contrary. Therefore, Plaintiff has properly pled the breach of contract claims in Count II.

Defendants also assert Plaintiff's Illinois Consumer Fraud Act claim should be dismissed because Plaintiff is not a consumer or has failed to allege any consumer protection concerns

9

which are protected under the Act. "A plaintiff must either allege a nexus with Illinois consumers or allege it was a consumer of a defendant's merchandise." *Menard, Inc. v. Countryside Indus., Inc.*, 01 7142, 2004 Wl 1336382, at * 2 (N.D. Ill. Jun. 14, 2004) (citation omitted).

Defendants contend that Plaintiff is not a consumer because it is a sophisticated corporation purchasing administrative services in connection with certain health and welfare benefits. However, a consumer is "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). Business entities, such as Plaintiff, are considered persons under the Consumer Fraud Act. 815 ILCS 505/1(c). "The term merchandise includes any objects, wares, goods, commodities, intangibles, real estate situated outside the State of Illinois, or **services** . . . ." 815 ILCS 505/1(b) (emphasis added). Plaintiff alleges that it purchased administrative services relating to pharmaceuticals from Defendants. Accordingly, Plaintiff has properly alleged it is a consumer under the Act.

Even if Plaintiff was not considered a consumer, Plaintiff has properly alleged a consumer protection nexus to withstand a motion to dismiss. "[C]ourts in Illinois have uniformly held that claims under the Act must meet the consumer nexus test by alleging that the conduct involves trade practices directed to the market generally or otherwise implicates consumer protection concerns." *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436-37 (7th Cir. 1996). This test may be satisfied by implicating public health, safety, or welfare issues. *Credit Ins. Consultants v. Gerling Global Reinsurance Corp.*, 210 F. Supp. 2d 980, 985-86 (N.D. Ill. 2002). Here, Plaintiff alleges that Defendants contract with 55,000 retail pharmacies and operate

four automated and nineteen mail-order pharmacies to process prescriptions for its clients. Plaintiff also alleges that Defendants overcharge for drugs, illegally keep rebates, and manipulate drug formularies. Together, these allegations implicate public health concerns under the Consumer Fraud Act.

Defendants also argue that Plaintiff has failed to plead its Consumer Fraud Act claims with particularity, as required under Federal Rule of Civil Procedure 9(b). Consumer Fraud Act claims which sound in fraud, as Plaintiff's claim does, must be pled with particularity. *Salon Group, Inc. v. Salberg*, No. 00 C 1754, 2002 WL 1058125, at *1 n.1 (N.D. Ill. Mar. 29, 2002). "[I]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). In order to survive dismissal, the plaintiff must plead the who, what, when, and where of the alleged fraud. *See Lachmund v. ADM Investor Serv., Inc.*, 191 F.3d 777, 782 (7th Cir. 1999) (quotations omitted). "The allegations must be specific enough to provide the defendants with a general outline of how the alleged fraud scheme operated and of their purported role in the scheme." *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 347 (N.D. Ill.1997) (citations omitted). To determine whether counts are sufficiently pled, a court will bear in mind the purposes of Rule 9(b): "(1) protecting the defendants' reputations; (2) preventing fishing expeditions; and (3) providing adequate notice to the defendants." *Rohlfing*, 172 F.R.D. at 347 (citing *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir.1994)).

As described more fully above, Plaintiff alleges that over the course of the contracts, Defendants defrauded and deceived Plaintiff by, among other methods: (1) negotiating secret rebates and discounts with drug manufacturers without passing those savings on to Plaintiff;

11

(2) placing more expensive drugs on the formulary so that Defendants could receive secret rebates, discounts, and other savings; (3) keeping the difference between Defendants' agreed price with retail pharmacies and the higher price Defendants charged Plaintiff; (4) charging Plaintiff the higher AWP for smaller lot sizes while Defendants purchased the drugs in larger lot sizes with a lower AWP; and (5) charging Plaintiff a higher MAC price for generic drugs than permitted. Plaintiff's allegations adequately place Defendants on notice of the fraud charged and, therefore, meet the pleading requirements of Rule 9(b).

Finally, Defendants argue that Plaintiff's Consumer Fraud Act claim should be dismissed as to Caremark Rx because it is not a party to the contracts. However, Plaintiff has alleged that Caremark Rx, the parent of Caremark, Inc., was involved with the fraud. This allegation is sufficient to withstand a motion to dismiss.

Based on the above, Defendants' Motion to Dismiss Counts II and III is denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted in part and denied in part. Count I is dismissed.

Date: 1/14/2005

JOHN W. DARRAH, Judge
United States District Court